UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| COLBY BLODGETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00111-SDN |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |

## ORDER ON MOTION TO DISMISS

Plaintiff Colby Blodgett alleges he was rear-ended by a United States Postal Service ("USPS") truck and suffered property damage and personal injuries as a result. Pl.'s Compl. (ECF No. 1). He brings this action against the United States for damages under the Federal Tort Claims Act ("FTCA"). Defendant United States moves to dismiss Blodgett's claim for damages in excess of $16,850.75 pursuant to Rule 12(b)(1) (ECF No. 10). For the reasons that follow, the motion is **granted**.

## BACKGROUND

The Court draws the background from Plaintiff's Complaint (ECF No. 1), Defendant's Motion to Dismiss (ECF No. 10), and Plaintiff's Objection to Defendant's Motion to Dismiss (ECF No. 12). *See Gonzalez v. U.S.* 284 F.3d 281, 288 (1st Cir. 2002) ("While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion . . . .").

On October 20, 2021, Blodgett was driving when a USPS truck hit his car. Pl.'s Compl. ¶¶ 7–9. Blodgett alleges he suffers from a reduced quality of life, physical and property damages, and lost wages as a result of this crash. *Id.* ¶ 10; Pl.'s Obj. at 2. In

response to this incident, Blodgett submitted a Standard Form 95 ("SF-95") claim for damage, injury, or death, which he later amended twice. Pl.'s Obj. at 2–4.

Blodgett filed his first SF-95 on November 11, 2021. *Id.* at 2. In the "Property Damage" section of the Form, Blodgett wrote the amount $16,850.75. *Id.* at 2. In the "Personal Injury" section, Blodgett wrote "to be determined as symptoms are ongoing." *Id.* at 2; Def.'s Mot. at 2. In the section marked "TOTAL (Failure to specify may cause forfeiture of your rights)," Blodgett again wrote "to be determined as symptoms are ongoing." Pl.'s Obj. at 2; Def.'s Mot. at 2; (ECF No. 12-2). USPS then informed Blodgett's attorney that it would require documentation of the property damage and an updated SF-95 form. Pl.'s Obj. at 2. On December 16, 2021, Blodgett's attorney submitted the second SF-95, this time with documentation of his property damage. *Id.* at 3. The second SF-95 Form stated "Initial estimate as $15,755.15 plus tow bill of $1095.00" under the "Property Damage" section; Blodgett left the "Personal Injury" and "Wrongful Death" sections blank (ECF No. 12-2). Under "TOTAL (Failure to specify may cause forfeiture of your rights)", Blodgett wrote "$16,850.76". The second SF-95 also included a cover letter from Blodgett's attorney stating he "will subsequently and separately submit a Notice of Claim for [Blodgett's] personal injuries once the total value of his injury claim can be more accurately determined." *Id.*; (ECF No. 12-2).

On August 1, 2022, USPS sent Blodgett a letter that stated specifically:

> In support of the claim for **personal injury or death**, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis and the period of hospitalization or incapacitation, attaching itemized bills for medical, hospital or burial expenses actually incurred.

(ECF No. 9-4) (emphasis added). The letter went on to state: "These documents should be sent to my attention with the next 30 days. **If you do not submit any additional documentation, we will be unable to properly evaluate the claim and we will have no recourse but to issue a denial**." *Id.* (emphasis added). Blodgett did not respond.

Following the second SF-95, USPS and Blodgett's attorney discussed a potential settlement. *Id.* During these discussions Blodgett's attorney repeated that "the value of [Blodgett's] personal injury claim could not yet be accurately made" and that Blodgett would not settle if it required that he waive his personal injury claim. Pl.'s Obj. at 2. On October 25, 2022, USPS sent Blodgett a letter offering "16,341.77 as full and final settlement of this administrative claim." (ECF No. 9-5). Shortly after receiving this offer, during a telephone call with a USPS representative, Blodgett, through his counsel, declined the settlement offer and told the representative that "Plaintiff could not accept the property damage settlement offer if it meant he had to waive his personal injury claim." (ECF No. 12-1). Blodgett neither submitted an additional SF-95, nor revised the December 16, 2021, SF-95. On December 12, 2022, nearly a year after having received the December 2021 SF-95 and having not (1) reached a settlement with Blodgett, (2) received the "separate Notice of Claim for Blodgett's personal injuries," nor (3) received any indication that Blodgett was revoking the December 2021 SF-95 and did not want USPS to act on the claim, USPS denied the claim for personal injury and property damage. Def. Mot. at 3. In the denial letter, USPS also informed Blodgett that he had six months from the date of the final decision to file a motion to reconsider. (ECF No. 9-6).

Blodgett pleads that he did not and could not finalize the original SF-95 claim for personal injury because his work status "remained in limbo" until April of 2023, which

3

made him unable to account for lost wages in valuing his personal injury. (ECF No. 12 at 3). In April 2023, Blodgett became certain he could not return to work at his old job. *Id.* at 4. Blodgett's attorney then hired an economics expert who valued Blodgett's claim at $1,074,891.00, most of which accounted for his lost wages. *Id.* On June 8, 2023, Blodgett filed a request for reconsideration of his claim with USPS. *Id.* at 4. This request included a demand for $1,074,891.00. *Id.* USPS denied the request as untimely. *Id.* On September 22, 2023, Blodgett finally submitted the third SF-95 as an amendment to his previous claim. (ECF No. 9-9). The third SF-95 Blodgett filed included a claim for $1,074,891.00. *Id.* USPS did not respond to SF-95 number three but sent a letter denying Blodgett's Request for Reconsideration on May 21, 2024. (ECF No. 14). Blodgett then filed suit in this Court.

## DISCUSSION

The United States moves to dismiss Blodgett's claims in excess of $16,850.75 under Rule 12(b)(1) for lack of subject matter jurisdiction based on sovereign immunity. I accept Plaintiff's well-pleaded factual allegations from his complaint (ECF No. 1), Objection to Defendants Motion (ECF No. 12), and supporting affidavit (ECF No. 12-1). *Valetin v. Hosp. Bella Vista*, 254 F.3d 358, 363–64 (1st Cir. 2001). I draw all reasonable inferences in Plaintiff's favor. *Id.*

"It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (cleaned up). The Federal Tort Claims Act "is a limited waiver of sovereign immunity which allows an injured party to sue the United States for torts committed by federal employees." *Corte-Real v. United States*, 949 F.2d 484, 485 (1st Cir. 1991). "[T]he

4

FTCA must be 'construed strictly in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires.'" *Bolduc v. United States*, 402 F.3d 50, 56 (1st Cir. 2005) (quoting *United States v. Horn*, 29 F.3d 754, 762 (1st Cir. 1994)). A plaintiff can only bring a claim against the United States for torts committed by a federal employee after he properly raises the claim within the federal agency and has it denied. 28 U.S.C. § 2675(a); *Corte-Real*, 949 F.2d at 485 ("Prior to commencing an action against the United States under the FTCA, a claimant must have first presented the claim to the appropriate federal agency and the claim must have been denied."). Section 14.2 of Title 28 of the Code of Federal Regulations provides guidance on administrative claims filed pursuant to the FTCA. In relevant part, § 14.2(a) states:

> For purposes of the provisions of 28 U.S.C. 2401(b . . . a claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident . . . .

28 C.F.R. § 14.2(a). In addition, § 14.2(c) allows claimants who have properly presented their claims to make an amendment "at any time prior to final agency action." *Id.* § 14.2(c).

To state a sum certain, a claimant must provide a definite monetary figure, representing the maximum amount of claimed damages. *Holloway v. United States*, 845 F.3d 487, 489 (1st Cir. 2017) ("An essential element of a claim is 'notification of the incident,' via 'an executed' SF 95 or 'other written' document, 'accompanied by' a demand 'for money damages in a *sum certain*'" (quoting 28 C.F.R. § 14.2(a))). "The purpose of the sum certain requirement goes beyond mere administrative convenience; it is to apprise the government of its possible liability and to provide the government with notice

'sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all.'" *Coska v. United States*, 114 F.3d 319, 322 (1st Cir. 1997); *Corte-Real*, 949 F.2d at 486.

### A. The First Two SF-95s

First Circuit precedent maintains that indefinite language such as "to be determined" fails to meet the sum certain requirement. *Corte-Real*, 949 F.2d at 486. In *Corte-Real* the plaintiff submitted an SF-95 claiming personal injury damages of "$100,000 plus because still treating and out of work." *Id.* at 485. The First Circuit reasoned:

> To be sure, when the $100,000 appeared in [the SF-95] it was unfortunately accompanied by language suggesting the possibility of a higher claim. The Government was entitled and indeed required, if it was to proceed with the claim, to disregard this. We think it should have done so. To throw out the claim entirely, as other than one for a sum certain, was, on these facts, bureaucratic overkill.

*Id.* The facts are similar here. With respect to his first two SF-95 submissions, Blodgett gave a sum certain of $16,850.75 for property damage and indicated that he could not determine the personal injury damage at that time. Despite instruction from USPS to file an amended SF-95 that identifies a numerical amount for personal injury damages or risk being denied, Blodgett refrained from doing so until he gained more clarity on the status of his employment (ECF No. 12-1). Moreover, Blodgett was under the impression that, although they resulted from the same incident, the claim for property damages could be assessed separately from the personal injury claim. *Id.*; Pl.'s Obj. at 2–3. Unfortunately, Blodgett's failure to claim a numerical amount for personal injury damages waives his claim to such recovery under the FTCA. *Corte-Real*, 949 F.2d at 486–87.

### B. The Request for Reconsideration and Third SF-95

Blodgett argues that either his request for reconsideration or his third SF-95 presents USPS with a sum certain for $1,074,891.00. Pl.'s Obj. at 7–8. This would be true had either operated as a timely amendment to his claim. Regulations passed under the FTCA provide that a claim "may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. 2675(a)." 28 C.F.R. § 14.2(c).[1] Here, Blodgett presents two arguments in determining whether he complied with this regulation.

First, Blodgett argues he is entitled to amend his claim any time prior to filing this action. Pl.'s Obj. at 8. This is a flawed understanding of the administrative process. A plain reading of the regulation supports the government's position that Blodgett was allowed to amend his claim until it was denied.[2] The FTCA's underlying policy is consistent with this reading. *See Coska v. United States*, 114 F.3d 319, 322 (1st Cir. 1997) ("The purpose of the sum certain requirement goes beyond mere administrative convenience; it is to apprise the government of its possible liability and to provide the government with notice 'sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all.'" (quoting *Corte-Real*, 949 F.2d at 486). Notice of a sum certain cannot come after the government investigates and denies said claim. Rather, FTCA regulations provide it must come before or during the investigation. *See* 28 C.F.R. § 14.2(a), (c).

---

[1] In Defendant's Reply to Plaintiff's Objection (ECF No. 19), the government argues regulations specific to suits against USPS control here. Def.'s Reply at 4. Those regulations provide that a claim against USPS may be amended before "the claimant's exercise of the option to file a civil suit pursuant to 29 U.S.C. 2675(a) . . . [or] the Postal Service's issuance of a written denial of the claim." 39 C.F.R. § 912.5. Blodgett argues the FTCA controls. Pl.'s Obj. at 7 n.2. Under either regulation my analysis would reach the same conclusion: Blodgett's right to amend ended when USPS denied his claim.

[2] 28 C.F.R. § 14.2(c) reads in relevant part "[a] claim presented in compliance with paragraph (a) of this section may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. 2675(a)."

7

Blodgett's second argument is that he complied with FTCA regulations because USPS did not take "final agency action" until May 21, 2024, when it formally denied his request for reconsideration. The First Circuit has not interpreted "final agency action" in the context of FTCA regulations. Here, the Court draws a parallel between the FTCA and the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 551–59. In the context of judicial review of agency decisions under the APA, "final agency action" has two criteria: "[f]irst, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up); *see also Impact Energy Res. v. Salazar*, 693 F.3d 1239, 1254 (10th Cir.2012) (Seymour, J., concurring) ("When interpreting the meaning of the word 'final' in statutes using that term in relation to judicial review of agencies, courts commonly apply the APA's meaning of 'final.'").[3]

Under this definition, Blodgett's argument is unsuccessful. USPS's denial of Blodgett's claim was neither tentative nor interlocutory and rights and obligations clearly arose under the FTCA and its regulations following this denial. Blodgett's right to file this very action accrued as soon as USPS denied his claim. The FTCA itself does not use "final agency action," but instead provides that a claimant can commence action after his claim is "finally denied." 28 U.S.C. § 2675. Under the FTCA and its regulations, final agency action was taken when USPS denied Blodgett's claim on December 12, 2022. Blodgett's ability to seek reconsideration of USPS's decision does not render it nonfinal. *Cf. Olamide*

---

[3] The FTCA is not a statute permitting judicial review of agencies. However, like the APA, the FTCA requires a plaintiff exhaust administrative remedies before turning to the courts. And, as discussed *infra*, the APA's construction is consistent with the FTCA's underlying policy. Therefore, I look to the APA's construction of "final agency action" in assessing Defendant's Motion to Dismiss.

*Olorunniyo Ore v. Clinton*, 675 F. Supp. 2d 217, 223 (D. Mass. 2009) ("[I]n cases seeking judicial review pursuant to the APA, a plaintiff is not required to exhaust non-mandatory administrative remedies." (citing *Darby v. Cisneros*, 509 U.S. 137, 153–54 (1993))).

To read § 14.2(c) otherwise runs counter to the principle that the Court must not construe the FTCA "beyond such boundaries as its language plainly requires." *Bolduc*, 402 F.3d at 56. Further support comes from the settlement-driven policy of the FTCA. As the government notes, allowing post-denial amendment of a claim would render any investigation an agency performs on the initial claim futile. *See McKenzie v. United States*, No. 21-cv-00233, 2022 WL 2073373, at *4 (D. Me. June 9, 2022) ("[C]ourts have determined that amendments attempting to add new claimants, claims, and/or damages outside the limitations period were impermissible material changes that would disrupt the settlement process.").

Therefore, Blodgett's amendment was untimely, and USPS was not presented a sum certain with respect to his personal injuries in accordance with 28 U.S.C. § 2675(a).

The Court is sympathetic to the fact that Blodgett repeatedly indicated to the USPS that *another* SF-95 form was forthcoming and that he specifically declined the offer of settlement—for nearly the exact amount requested—for the property damage because he did not want to waive his personal injury claims and relayed the same to USPS. Moreover, Blodgett ultimately filed his final SF 95, with a sum certain, before the two-year statute of limitations deadline expired. The fact is if Blodgett had never initiated the original SF-95 "property" claim and simply waited until he had the information required regarding his personal injury damage, his claim apparently would have been timely. However, simply informing the USPS of a forthcoming claim is insufficient under the FTCA. *See William Spencer & Spencer Bros. LLC v. U.S. Dep't of Transp.*, No. 23-cv-227, 2024 WL 3429437,

9

at *4 (D.N.H. July 16, 2024) ("Exhaustion requires more than just putting the agency on notice of a future lawsuit.").

Unfortunately, although the First Circuit has allowed some "leniency" concerning technical compliance with the "sum certain" requirement, *see, e.g.*, *Holloway*, 845 F.3d at 490–91 ("sum certain" requirement can be met where claimant includes paperwork along with the claim that permits the agency to calculate the total damages), there is nothing in the FTCA or in this Circuit's precedent that requires a federal agency to wait until the two-year statute of limitations has passed before issuing a final decision on a claim it has pending before it. The Court in *William Spencer* explained it well: "[T]here is no support in the law for a "history of litigation" exception to the requirement of a written FTCA claim. On the contrary, the First Circuit has made clear that judges must give the FTCA exhaustion requirement 'a strict reading' and refuse to extend the waiver of sovereign immunity 'beyond that which Congress intended.'" 2024 WL 3429437, at *5 (citations omitted) (quoting Holloway, 845 F.3d at 489).

### C.   28 U.S.C. § 2675(b)

Plaintiff's final argument is that even if his amendment was untimely, it is still permissible under the FTCA, which provides:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b).

Blodgett argues that, because he was unsure whether he would return to work at his previous job until April 2023, it was impossible to calculate his lost wages claim and

10

he should be able to seek $1,074,891.00 in damages under the "newly discovered evidence" allowance. Pl.'s Obj. at 9. However, this argument has been rejected by the First Circuit. "[The FTCA] demands a showing that some new and previously unforeseen information came to light" between the time of filing the administrative claim and the civil action. *Reilly v. United States* 863 F.2d 149, 171 (1st Cir. 1988) (citation and internal quotations omitted).

Although Blodgett was not given a definite timeline, he was taken out of work following the collision on October 20, 2021. Pl.'s Obj. at 4. Blodgett's valuation of his lost wages claim was performed by an economics expert on June 7, 2023, nearly two months after learning he was unable to return to CSX. *Id.* at 9. Blodgett maintains that "[t]he only way his future lost wages could be calculated is to compare what he would have continued to earn in his prior occupation to what he will likely be able to earn in the future." Pl.'s Obj. at 9–10. The law does not require Blodgett to be certain about every outcome before investigating his potential claims. *See Reilly*, 863 F.2d at 171 ("[Plaintiff's] knowledge need not be certain."). Blodgett's investigation of his lost wages could have commenced as he foreshadowed the worst-case scenarios in his claims against the United States.

For those reasons, Blodgett's lost wages claim cannot be considered "newly discovered evidence" under the FTCA. 28 U.S.C. § 2675(b). Having not amended his claim either in compliance with the FTCA or its regulations, Blodgett cannot pursue his claims in excess of $16,850.75.

## CONCLUSION

While I am sympathetic to the hardships Blodgett has endured both from his injury and the form-filled bureaucratic process to seek damages, without having timely given

USPS a value of his physical injury before USPS took final action on the claim before it, sovereign immunity prevents Blodgett from pursuing those damages.

I therefore **GRANT** Defendant's Motion to Dismiss (ECF No. 10) and dismiss Plaintiff's claims in excess of $16,850.75.

SO ORDERED

Dated this 22nd day of October, 2024

/s/ Stacey D. Neumann
U.S. District Judge